UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
In The Matter Of

THE ARBITRATION OF CERTAIN        CV 86-2842 (ADS)
CONTROVERSIES BETWEEN

WARREN LEACH,

        Petitioner,

  -against-

LOCAL 803, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN,
AND HELPERS OF AMERICA AND
CATHOLIC CENTER, INC.,

        Respondents.
--------------------------------X
WARREN LEACH,

        Plaintiff,        CV 87-0212 (ADS)

  -against-

CATHOLIC MEDICAL CENTER OF
BROOKLYN AND QUEENS, INC.,
and LOCAL 803, INTERNATIONAL      MEMORANDUM
BROTHERHOOD OF TEAMSTERS,         AND ORDER
CHAUFFEURS, WAREHOUSEMEN,
AND HELPERS OF AMERICA,

        Defendants.
--------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
LONG ISLAND OFFICE
★ FEB 04 1991 ★
ENTERED

A P P E A R A N C E S:

    JAY B. ITKOWITZ, ESQ.
    8 West 40th Street
    Suite 900
    New York, New York  10018
    By: Jay B. Itkowitz, Esq.
        Lori H. Lahn, Esq.
    Attorney For Plaintiff

P-049

```
          KELLEY DRYE & WARREN, ESQS.
          101 Park Avenue
          New York, New York  10178
          By:  Rita Hernandez, Esq.
          Attorneys For Respondent Catholic
               Medical Center of Brooklyn
               and Queens, Inc.

          SPIVAK, LIPTON, WATANABE & SPIVAK, ESQS.
          1370 Avenue of the Americas
          New York, New York  10019
          By:  Franklin K. Moss, Esq.
          Attorneys For Respondent
               Local 803, International Brotherhood
               Of Teamsters, Chauffeurs, Warehousemen,
               and Helpers Of America
```

SPATT, District Judge.

The motion to dismiss these actions raises the underlying issue, among others, of whether a discharged employee has standing to compel his employer to proceed to arbitration pursuant to a collective bargaining agreement between the employee's union and the employer.

### PROCEDURAL BACKGROUND

Petitioner/plaintiff ("Leach") was employed at Mary Immaculate Hospital, a division of respondent/defendant Catholic Medical Center of Brooklyn and Queens, Inc. ("CMC"), until he was terminated on March 4, 1986 because he allegedly slashed a co-employee's tires.

Leach subsequently commenced an action in New York

2

State Supreme Court, pursuant to N.Y. CPLR § 7503(a),[*] seeking to compel arbitration of his claim that he was dismissed from his employment without proper grounds. CMC filed a Verified Removal Petition on August 25, 1986, CV 86-2842 ("Action #1). Respondent/defendant Local 803, International Brotherhood Of Teamsters, Chauffeurs, Warehousemen, and Helpers Of America ("Local 803") joined in the Removal Petition, and Action #1 was originally assigned to the Hon. Raymond J. Dearie.

By Notice of Motion dated September 6, 1986, CMC and Local 803 moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil procedure to dismiss Action #1 on the ground that Leach lacked standing since he was not a party to the collective bargaining agreement between CMC and Local 803. Leach submitted no opposition to the respondents' motion to dismiss. However, because of apparent confusion over whether

---

[*] N.Y. CPLR § 7503(a) provides, in relevant part, that "[a] party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration. Where there is no substantial question whether a valid agreement was made or complied with, and the claim sought to be arbitrated is not barred by limitation under subdivision (b) of section 7502, the court shall direct the parties to arbitrate. Where any such question is raised, it shall be tried forthwith in said court."

3

Action #1 was settled, Judge Dearie never adjudicated the motion on the merits. The case was mistakenly marked settled on October 26, 1986. This erroneous dismissal was vacated by the court in February, 1989. The case was reassigned to this Court on December 18, 1989.

Leach commenced Action #2, CV 87-0212, on January 28, 1987. The complaint in Action #2 alleged claims of wrongful termination and breach of the duty of fair representation pursuant to § 301 of the Labor-Management Relations Act, 29 U.S.C. § 141, et seq. Action #2 was originally assigned to the Hon. Eugene H. Nickerson and was reassigned to this Court in December, 1990.

The Court held a conference in both Action #1 and Action #2 on December 20, 1990, at which time the following took place: (1) the Court instructed Leach's counsel that he had until January 3, 1991 to move to vacate his default in failing to oppose the respondents' motion to dismiss Action #1; (2) the Court gave Leach's counsel until January 3, 1991 to move to consolidate Actions #1 and #2; and (3) the Court scheduled trial of either Action #1 or #2, or both, for February 11, 1991, if either or both actions were

4

viable subsequent to the Court's disposition of the parties' motions.

Leach did not move to vacate his default in opposition to respondents' motion to dismiss Action #1.

By Notice of Motion dated January 3, 1991, Leach did move to consolidate Actions #1 and #2 and to amend his complaint in Action #1 to include his claims in Action #2.** In his motion papers, Leach conceded that Action #2 was barred by the applicable statute of limitations (see Affidavit of Jay B. Itkowitz, Esq., January 16, 1991, ¶4 ["[p]laintiff concedes that, in the event that this Court denies plaintiff's instant motion to consolidate and for leave to amend, the second action would be time barred"]) unless Action #2 could "relate back" to the time Action #1 was filed coupled with the granting of his motion to consolidate and amend the complaint.

CMC and Local 803 opposed the motions by Leach, and the parties appeared before the Court on January

---

   ** Leach's motion to amend did not annex a proposed amended complaint (see Nation v. United States, 512 F.Supp. 121, 124-25 [S.D. Ohio 1981] [emphasis in original] [citing, inter alia, Schwab v. Nathan, 8 F.R.D. 227 [S.D.N.Y. 1948] ["Civil Rules 7(b)(1) and 15(a) impliedly require submission of the proposed amended pleading with the motion to amend"]; Williams v. Wilkerson, 90 F.R.D. 168, 169-70 [E.D. Va. 1981] [same]).

18, 1991 for oral argument.

## DISCUSSION

The collective bargaining agreement at issue (see Affidavit of John F. Gibbons, Esq., August 29, 1986, Exhibit B, hereafter referred to as the "Agreement"), entitled "AGREEMENT between MARY IMMACULATE HOSPITAL and LOCAL 803 INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA," was executed by the Vice President of Mary Immaculate Hospital and by the Second Treasurer of Local 803 on September 30, 1985. Leach is clearly not a party to the Agreement.

Article XXI of the Agreement, entitled "GRIEVANCE AND ARBITRATION," provides in relevant part as follows:

> "1. All complaints, controversies, disputes and grievances . . . arising between the Hospital and the Union concerning the interpretation, application, or performance of the terms of this agreement, a breach thereof, shall be taken up in accordance with the following procedure:
>
> Step One: The employee or his/her representative shall take the matter up with the employee's supervisor or his/her designee within ten (10) working days after cause of complaint arises. The supervisor or his/her designee shall give his/her answer within three (3) working days thereafter.
>
> Step Two: If no satisfactory agreement is reached in Step One, the Union representative shall present the grievance to the employee's department head within five (5) working days

after the supervisor or his/her designee has given his/her reply to Step One.

Step Three: If no satisfactory agreement is reached in Step Two, the Union shall reduce the grievance to writing and present it within five (5) working days to the Hospital Administrator or to his/her designee after receiving the supervisor's response to Step Two. Upon receipt of the written grievance, the Hospital will respond within five (5) working days.

2. Arbitration

If any timely grievance of the Union or an employee that involves the interpretation, application or performance of the express terms of this agreement is not disposed of in the foregoing grievance procedure, the Union may, within ten (10) working days after receipt of the answer in writing to the Third Step, give to the Hospital a written notice of its intent that the issue be submitted to the arbitration process."

Since Leach moved to compel arbitration in Action #1 on the basis of the Agreement (see Notice of Petition [moving "for an order compelling the arbitration of the claim that petitioner was dismissed from his employment without grounds which is the subject matter of the claim in the above entitled action since said claim is arbitratable pursuant to a valid written agreement between the plaintiff and the defendants"], Petition, ¶7 [referring to the grievance and arbitration provisions of the Agreement], and Petition, WHEREFORE Clause ["seeking an order "pursuant

7

to the provisions of CPLR directing that an arbitration proceed according to the collective bargaining agreement"]), his claim is governed by federal law. (See Local 174, Teamsters, Chauffeurs, Warehousemen, and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 103 [1962] ["issues raised in suits covered by § 301 [must] be decided according to the precepts of federal labor policy. . . . the possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective bargaining agreements"]; Laborers Int'l Union v. HSA Contractors, Inc., 728 F.Supp. 519, 522 [E.D.WI. 1989] [issue of whether union must submit to arbitration governed by federal law]; compare Wren Distributors, Inc. v. Phone-Mate, Inc., 600 F.Supp. 1576, 1579-80 [E.D.N.Y. 1985] [""[i]n determining whether a party is bound by an arbitration agreement [in a contract], a federal court ⁏ look to state contract law principles"])

It is well established that an employee does not have standing to compel arbitration pursuant to a collective bargaining agreement to which he is not a party. (See Procter & Gamble Independent Union v.

8

Procter & Gamble Mfg. Co., 312 F.2d 181, 184-85 [2d Cir. 1962] ["[t]he right to arbitrate under a collective bargaining agreement is not ordinarily a right incident to the employer-employee relationship, but one which is incident to the relationship between employer and union. Under the collective agreement between the parties, it was the union which had the right to take grievances to arbitration, not the individual employees"], cert. denied, 374 U.S. 830 [1963])

Addressing a similar collective bargaining agreement grievance procedure as existed between the respondents, the Second Circuit held as follows:

> "It matters not that 'grievance' is defined in one sense as a 'dispute * * between the company and any employee'; that is merely a definition in the contract and does not in any way govern the proper procedure for settling the grievance. It is clear that the rights of the individual employee with regard to the grievance procedure are limited to step one, confrontation with the Department Foreman. From that point on, the right to progress from step one to the next step is vested in the Union and ultimately in the employer as well." (Black-Clawson Co. Paper Machine Div. v. International Assoc. of Machinists, 313 F.2d 179, 183 [2d Cir. 1962])

Recent authority also supports dismissal of Action #1 on the ground of lack of standing. In Trompeter v. Boise Cascade Corp., 877 F.2d 686 (8th Cir. 1989), the

9

plaintiff was terminated because he had allegedly received fraudulent unemployment benefits. The plaintiff's union filed a grievance on behalf of the plaintiff, but did not seek arbitration after the plaintiff's employer denied the grievance. Thereafter the plaintiff brought an action seeking to compel his employer to arbitrate. In affirming the district court's dismissal of the action, the court held:

> "under the terms of the [employer]-Union collective bargaining agreement Article XXIII ("Grievances"), [plaintiff] has no standing to compel arbitration under these circumstances. Article XXIII specifically confers the right to compel arbitration upon the 'Company' and the 'Union' only." (Id. at p.687 [citing, inter alia, Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co. and Black-Clawson Co. Paper Machine Div. v. International Assoc of Machinists, supra]; see also Safran v. United Steelworkers of America, AFL-CIO, 678 F.Supp. 1178, 1181 [W.D.Pa. 1988] [although each plaintiff "is clearly a third party beneficiary of the collective bargaining agreement, no plaintiff alone has the right to bypass the procedures set forth in the agreement and compel defendant USX to proceed to arbitration with their individual grievance"])

The reason why an employee does not have standing to compel arbitration pursuant to a collective bargaining agreement to which he or she is not a party was clearly stated by the United States Supreme Court in the seminal case of Vaca v. Sipes:

> "It can well be doubted whether the parties

to collective bargaining agreements would long continue to provide for detailed grievance and arbitration procedures of the kind encouraged by L.M.R.A. § 203(d), supra, if their power to settle the majority of grievances short of the costlier and more time-consuming steps was limited by a rule permitting the grievant unilaterally to invoke arbitration. Nor do we see substantial danger to the interests of the individual employee if his statutory agent is given the contractual power honestly and in good faith to settle grievances short of arbitration." (386 U.S. 171, 192 [1967]; see also Black-Clawson Co. Paper Machine Div. v. International Assoc of Machinists, supra, 313 F.2d at p.186 ["[c]haos would result if every disenchanted employee, every disturbed employee, and every employee who harbored a dislike for his employer, could harass both the union and the employer by processing grievances through the various steps of the grievance procedure and ultimately by bringing an action to compel arbitration in the face of clear contractual provisions intended to channel the enforcement remedy through the union"])

Since Leach was not a party to the Agreement as to which he seeks to compel arbitration, he has failed to state a claim upon which relief can be granted in Action #1. In addition, the Court notes that Leach is in default with respect to the motion to dismiss Action #1 by CMC and Local 803 (see Local Civil Rule 3[b] ["The opposing party shall serve and file with the papers in opposition to the motion and an answering memorandum . . . setting forth the points and authorities relied upon in opposition. Failure to

11

comply may be deemed sufficient cause for the denial of the motion or the granting of the motion by default"]). For both these reasons, the motion by CMC and Local 803 to dismiss Action #1 is granted.

Leach conceded that in the event the Court dismissed Action #1 there could be no foundation for a motion to consolidate and possible "relation back" and Action #2 would have to be dismissed as untimely (see Itkowitz Affidavit, ¶4). Accordingly, Action #2 is dismissed as untimely.

Finally, given the Court's rulings as above set forth, Leach's motions to consolidate Actions #1 and #2 and to amend his petition in Action #1 are moot and are denied.

The Clerk of the Court is directed to enter Judgment dismissing Action #1, CV 86-2842, and to enter Judgment dismissing Action #2, CV 87-0212.

SO ORDERED.

Dated: Uniondale, New York
February 4, 1991

_____
U.S.D.J.

P-049